**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rocky Dale McKEEVER, Brenda Gayle McKeever and Stephen C. Newman, Defendants–Appellants.**

No. 88–1985.

United States Court of Appeals, Fifth Circuit.

Feb. 6, 1990.

Order on Grant of Rehearing and Rehearing En Banc April 10, 1990.

---

Dane A. Barham, Dallas, Tex., for Rocky Dale McKeever.

Denver G. McCarty, Dallas, Tex., for Brenda Gayle McKeever.

E.X. Martin, III, Dallas, Tex., for Stephen C. Newman.

Richard B. Roper, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Fort Worth, Tex., for U.S.

Before GOLDBERG, GARWOOD and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.

Defendants appeal their drug-related convictions on the grounds that the district court erroneously denied their motions to suppress. We reverse.

I.

Defendants, Stephen C. Newman, Rocky Dale McKeever, and Brenda Gayle McKeever, appeal their convictions of con-spiracy to knowingly and intentionally possess with the intent to manufacture phenylacetone and conspiracy to knowingly and intentionally manufacture amphetamine. Before entering guilty pleas to the charges, defendants moved to suppress amphetamine laboratory materials and phenylacetone seized in a search of their residence. All three defendants challenge the district court's denial of their motions to suppress. In addition, Newman and Rocky McKeever challenge their sentences, arguing that the court did not properly apply certain provisions of the Federal Sentencing Guidelines.

On April 14, 1988, Sheriff Robert Harris learned from one of his deputies that twice that same day two men had purchased 180 pounds of ice from a grocery store owned by the deputy's father. The deputy also related that both he and an experienced informant detected on the men a strong odor of amphetamine. Furthermore, the deputy's father had tracked the two men to a secluded house within the sheriff's jurisdiction.

That same day, after interviewing the informants, Harris and other officers went to the house identified by the deputy's father. They positioned themselves in a wooded area some 200–300 yards from the house. From this vantage point, Harris, who had substantial experience with amphetamine laboratories, and the others could detect a faint odor of cooking amphetamine, apparently emanating from the house.

Later that evening, Harris telephoned Special Agent William J. Bryant of the Drug Enforcement Administration (DEA) and asked him to assist with the search, especially with those technical aspects that were potentially dangerous and for which the sheriff's department was ill-prepared. Bryant agreed to assist but told Harris that he would have to wait until the next morning. He also notified Harris that if the DEA were to participate in the search, Harris would have to obtain a warrant from a court of record, as required by federal law. Harris agreed to this requirement.

Immediately after conferring with Bryant, Harris returned to stake out the suspect house. This time he smelled a strong odor of cooking amphetamine. Based upon his experience, Harris became concerned that a search in the morning might be too late. Accordingly, he decided to procure a warrant immediately.

Shortly thereafter, Harris presented an affidavit of probable cause to Judge Barbara McBurney, a municipal judge for the Cities of Combine and Crandall, Texas, who was not a judge of a court of record. McBurney signed the warrant. She previously had been trained and certified as a reserve police officer but had ceased acting in this capacity. McBurney, who was also the wife of one of the officers who executed the warrant, went to the suspect house and observed the search but did not participate in any way.

Upon executing the warrant, Harris discovered a working amphetamine laboratory in the garage and utility room of the house. He also found chemicals and laboratory glassware scattered throughout the residence. Harris and his deputies arrested the defendants at the scene.

After arresting the defendants and securing the premises, Harris had Bryant notified of the situation and requested his assistance. Bryant, along with a DEA chemist and other agents, arrived on the scene shortly thereafter. Harris testified that the search had been completed before the agents' arrival. Upon his arrival, Bryant observed the laboratory and, after questioning Harris, learned that Harris had not obtained the warrant from a court of record. The DEA agents dismantled the laboratory and identified chemicals presented to them by Harris' officers.

Defendants contend that the evidence obtained in the above-described search should have been suppressed for a number of reasons: 1) the warrant was not obtained from a court of record; 2) the judge was not neutral and detached; and 3) the affidavits in support of the warrant application did not establish probable cause to issue the warrant.

## II.

Defendants argue first that the district court improperly denied their motion to suppress evidence seized under the authority of a search warrant that was not issued by a court of record. Defendants rely on Fed.R.Crim.P. 41(a) which requires that, "[a] search warrant ... may be issued by a federal magistrate or a judge of a state court of record...."

The government admits that Judge McBurney did not preside over a court of record. The government also concedes that, because of the participation of the federal officers in the search, the search was federal as defined by this court in *Navarro v. United States*, 400 F.2d 315, 317 (5th Cir.1968).[1] Also, the parties agree that the warrant was requested by state officers, alleged violations of Texas law, was issued by a state judge, and is, therefore, a state rather than a federal warrant. *United States v. Martin*, 600 F.2d 1175, 1180 (5th Cir.1979).

### A.

■ In *Navarro*, this court held that evidence was inadmissible in a federal prosecution if it had been seized in a federal search pursuant to a search warrant issued by a judge of a state court that was not a court of record. The panel concluded that Rule 41 "binds *federal* courts and *federal* officers" even when a state warrant is used. 400 F.2d at 318.

In *United States v. Sellers*, 483 F.2d 37, reh'g denied, 485 F.2d 688 (5th Cir.1973), cert. denied, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974), we limited *Navarro's* holding. The specific issue presented in *Sellers* was whether a federal prosecution could be based on evidence obtained under a *state* warrant, the application for which did not allege a violation of federal law and could not have been the predicate for a federal

---

1. Because of this concession, we do not decide whether this was a federal search. Compare

*United States v. Coronna*, 420 F.2d 1091 (5th Cir.1970).

warrant. The appellant in *Sellers* asked the Court to apply Rule 41(b)(2) as it had done in *United States v. Brouillette*, 478 F.2d 1171 (5th Cir.1973). In that case we interpreted Rule 41(b)(2) as authorizing issuance of a federal warrant only if the application for the warrant established probable cause to believe that a *federal* criminal law had been violated. In admitting the evidence, the *Sellers* court reasoned that where a "warrant was issued under authority of state law then every requirement of Rule 41 is not a sine qua non to federal court use of the fruits of a search predicated on the warrant, even though federal officials participated in its procuration or execution." *Id.* 483 F.2d at 43.

*Sellers* concluded that the court must examine the particular provision of Rule 41 that has not been obeyed by officers in obtaining and executing the state warrant. It is only through this provision-by-provision examination that a court can determine whether that disobedience will require the court to exclude evidence. We concluded that evidence obtained from a search pursuant to a state warrant could be used in a federal prosecution unless it "contravene[d] any Rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers." *Id.* "The proper test to be applied is whether a particular Rule 41 standard is one designed to assure reasonableness on the part of federal officers, or whether the provision merely blueprints the procedure for issuance of federal warrants." *Id.* at 44. *Sellers* explained that the Rule 41(a) court of record requirement met this test because it "was a substantive standard by which the conduct of federal searches should be measured rather than any mere procedural standard." *Id.* at 43. *Sellers*, therefore, reaffirmed our conclusion in *Navarro* that evidence was inadmissible in a federal prosecution if it was obtained during a federal search pursuant to a state warrant issued by a state court that was not of record.

The *Sellers* court, however, did not consider the 1972 amendment to Rule 41(a). This amendment added the requirement that a warrant could be issued "upon request of a federal law enforcement officer or an attorney for the government." The legislative history does not explain the purpose for this amendment.[2] In our view, the most plausible reason for this amendment is to limit the application of Rule 41(a) to those warrants requested by federal officers. Under this interpretation, none of Rule 41 provisions would apply to a state warrant—one sought by a state law enforcement officer to investigate a violation of state law. However, the amendment can also be interpreted as simply defining who is authorized to apply for a *federal* warrant without modifying the existing law related to Rule 41 limited application to state warrants. Under this interpretation, the 1972 amendment would have no effect on the court of record requirement. At least one circuit has interpreted the 1972 amendment in a third way. In *United States v. Radlick*, 581 F.2d 225 (9th Cir. 1978), the court noted that, although the state warrant had been obtained from a court of record, it was not issued upon the request of a federal law enforcement officer or an attorney for the government and it did not meet several other provisions of Rule 41. The court concluded that, unless the government could demonstrate on remand that the Rule 41 violations were not deliberate, the fruits of the search would be excluded.

The only case in this circuit decided after the 1972 amendment which addressed a violation of the Rule 41(a) court of record

---

**2.** The only legislative history relative to this amendment provides:

    Subdivision (a) is amended to provide that a search warrant may be issued only upon the request of a federal law enforcement officer or an attorney for the government. The phrase "federal law enforcement officer" is defined in subdivision (h) in a way which will allow the Attorney General to designate the category of officers who are authorized to make application for a search warrant. The phrase "attorney for the government" is defined in rule 54.

Advisory Committee Note, in Communication from the Chief Justice of the United States, H.R.Doc. No. 92–285, 92d Cong., 2d Sess. 43 (April 25, 1974).

requirement was *United States v. Comstock*, 805 F.2d 1194 (1986), reh'g denied, en banc, 810 F.2d 198 (5th Cir.), cert. denied, 481 U.S. 1022, 107 S.Ct. 1908, 95 L.Ed.2d 513 (1987). In *Comstock*, the panel concluded that although the state and federal officers conducted the search under the erroneous belief that the authorizing warrant was issued by a court of record, the officers held this belief in good faith. Consequently, the evidence was admitted. Although the *Comstock* court predicated its decision on the officers' good faith, the court explained that the 1972 amendment

> suggest[s] that a state court warrant issued at the request of state officers only, directed only to such officers, and based on a probable cause showing of a state law violation, is not intended to be governed by the provisions of Rule 41. Nothing in Rule 41 states that it is applicable to such a warrant, or becomes so because federal officers participate in the search.

*Id.* at 1204–05 n. 10. See also *United States v. Searp*, 586 F.2d 1117, 1125–26 (6th Cir.1978) (Merritt, concurring), cert. denied, 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979); *United States v. Benford*, 457 F.Supp. 589, 595 (E.D.Mich.1978).

Despite the above language in *Comstock*, another post-amendment opinion of this court, *United States v. Martin*, 600 F.2d 1175 (5th Cir.1979), requires us to apply the *Sellers* provision-by-provision approach to determine whether the provision in question is governed by Rule 41. In other words, we conclude that *Martin* prevents us from interpreting the 1972 amendment as totally removing Rule 41 restrictions from state warrants.

In *Martin* the search was authorized by a state warrant issued by a state judge to a state officer for violations of state law, but federal participation was sufficient to make the search federal. A city policeman, who was not authorized to do so under Alabama law, participated in the search and seized evidence. The court quoted the *Sellers* standard for determining which Rule 41

provisions apply to state warrants. The court then presumably concluded that Rule 41's requirements defining who is authorized to conduct a search did not meet the *Sellers* exception and applied to state warrants. The court examined Rule 41 and its companion statute 18 U.S.C.A. § 3105 and concluded that federal law, unlike Alabama law, enabled an officer, not himself authorized to conduct a search, to participate in it if he was acting under the direction of someone authorized to do so. Because the federal rules allowing delegation of authority to conduct a search prevailed over what the court assumed was a lack of such a provision in Alabama law, the evidence obtained by the city policeman while he was under the supervision of an authorized person was admissible. However, the court suppressed evidence seized by the city policeman while he was unsupervised. *Id.* at 1184. *Martin*, which was decided after the 1972 amendment, holds that at least one of Rule 41's provisions applies to a state warrant. *Martin*, therefore, precludes us from limiting the application of Rule 41 to federal warrants.

A number of other circuits have adopted the provision-by-provision approach of *Sellers* and many have continued to use this approach even after the 1972 amendment. See, e.g., *United States v. Krawiec*, 627 F.2d 577 (1st Cir.1980); *United States v. Mitro*, 880 F.2d 1480 (1st Cir.1989); *United States v. Burke*, 517 F.2d 377 (2d Cir.1975); *United States v. $22,287.00, United States Cur.*, 709 F.2d 442 (6th Cir.1983); *Searp*, 586 F.2d 1117.

Despite the fact that the plain meaning of the amendment to Rule 41(a) indicates that it controls only federal warrants and this view is supported by dicta in *Comstock*, we are constrained by circuit precedent in *Martin* to follow the provision-by-provision analysis of *Sellers*. It follows that the district court erred in denying defendants' motion to suppress the fruits of the federal search authorized by a state warrant that was obtained from a state court that was not of record.

## B.

The government argues that the good faith exception established in *Comstock* prevents the exclusion of this evidence. In *Comstock*, 805 F.2d at 1207, this court held that violations of Rule 41(a) should not result in exclusion of evidence if the "officers concerned acted in the affirmative good faith belief that the warrant was valid and authorized their conduct." Accordingly, suppression is not appropriate where "the officers did not act in reckless disregard or conscious indifference to whether [Rule 41(a)] applied and was complied with." *Id.* This is a subjective good faith standard.

■ The district court found that the officers acted in good faith. We can reverse such a finding only if we conclude that it is clearly erroneous. *Id.* at 1200.

■ In arguing that the officers did not act in good faith within the meaning of *Comstock*, defendants focus upon the conduct of Sheriff Harris, who was the prime mover in obtaining and executing the search. Harris testified that he knew both that he had to obtain a warrant from a court of record in order to bring the case in federal court and that Judge McBurney was not a judge of a court of record. The record evidence, therefore, does not support the district court's finding that Sheriff Harris held a good faith belief that the warrant issued from a court of record.

It is not clear whether state officers, such as Harris, must act in good faith or whether only the federal officers must do so. The *Comstock* court found that both the federal and state officers had acted in good faith. We need not decide this issue because, even if only the state of mind of the federal officers is relevant, the record also does not support a finding that they had a good faith belief that the warrant was issued by a court of record. The record reveals that when Sheriff Harris summoned DEA agent Bryant, Bryant did not know that the warrant had not been obtained from a court of record. But when Bryant arrived at the defendants' house he questioned Sheriff Harris about the source of the warrant. Before Bryant's agents dismantled the lab, Harris frankly told Bryant that the warrant did not issue from a court of record.

The government argues that the police officers acted in good faith because they intended to prosecute the case in a Texas state court where Judge McBurney's warrant is valid. The testimony on this point is equivocal[3] but even if we assume the officers intended to proceed in state court the government's argument misses the mark. The critical question is whether the officers had a good faith belief that a governing provision of Rule 41 had been obeyed. The record requires us to answer this question in the negative.

The district court erred in denying defendant's motion to suppress the evidence obtained on authority of a warrant issued by a court that was not of record as required by Rule 41(a). We need not reach defendant's other points of error.

---

3. Agent Bryant gave the following testimony at the suppression hearing:

Q. ... I am backing up now in going back to the time that you talked to Sheriff Harris on the phone right after you all got back from Alabama or wherever you all were. Did you all mention anything about going Federal with the case then?

A. The only thing I said if we did choose to go Federal we needed the warrant from a court of record and that is what I advised him.

Q. So when you got down there to the residence in the morning after you—at the time of the seizure did you have a conversation with Sheriff Harris?

A. Yes, sir, I did.

Q. And what did you tell him?

A. I asked him, at that time I found out he did not get it signed by a court of record. I did not know that until I got to the scene I asked him, you know, I said "'Federal or State, which way are we going to go?'" He said he was going to go State unless we could go Federal with them. I said I knew there were some exceptions to the court of record Rule but I would have to confer with the U.S. Attorney's office before we made the decision to go Federal.

Q. Was this—when did this occur? This occurred before or after you all had already picked up the evidence that was given to you by the Sheriff's Department?

A. I think it was initially when I first arrived there.

Hearing on motion to suppress at 51–52.

We, therefore, vacate the convictions of appellants and remand this case to the district court with instructions to give the government a reasonable time to retry the appellants. We do not consider whether appellants can be tried in state court on charges arising out of this search. See *United States v. Navarro*, 429 F.2d 928 (5th Cir.1970); *United States v. Navarro*, 441 F.2d 409 (5th Cir.1971).

VACATED and REMANDED.

GARWOOD, Circuit Judge, specially concurring:

I fully concur in Judge Davis' opinion, which follows the binding precedent of this Circuit. I append this additional writing merely to suggest that this Court reconsider en banc the applicability of Rule 41(a), Fed.R.Crim.P., to a warrant issued by a state court to state officers on their own initiative and application and based on a probable cause showing of a state offense, particularly where the state officers conduct the search in the legitimate furtherance of state law enforcement. In those circumstances, suppression for noncompliance with Rule 41(a)'s "court of record" requirement merely because federal officers, knowing that the warrant did not comply with Rule 41(a), nevertheless participate in the search to an extent which would have rendered it a "federal search" under principles, such as those of *Byars v. United States*, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927), originally designed to guard against evasion of the Fourth Amendment when it did not apply to the states, seems entirely unwarranted.

ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

Before CLARK, Chief Judge, GEE, REAVLEY, POLITZ, KING, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the suggestion for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that this cause shall be reheard by the Court en banc without oral argument. The Clerk will specify a briefing schedule for the filing of supplemental briefs.