UNITED STATES of America, Plaintiff–Appellee,

v.

Rocky Dale McKEEVER, Brenda Gayle McKeever and Stephen C. Newman, Defendants–Appellants.

No. 88–1985.

United States Court of Appeals, Fifth Circuit.

July 3, 1990.

Dane A. Barham, Dallas, Tex., for Rocky Dale McKeever.

Denver G. McCarty, Dallas, Tex., for Brenda Gayle McKeever.

E.X. Martin, III, Dallas, Tex., for Stephen C. Newman.

Richard B. Roper, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Fort Worth, Tex., Patty Merkamp Stemler, Deputy Chief, Appellate Sect., Criminal Div., Washington, D.C., for plaintiff-appellee.

Before GOLDBERG, GARWOOD and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This case is before the panel on remand from an en banc decision of this court. *United States v. McKeever*, 905 F.2d 829 (5th Cir.1990). The original panel opinion vacated the district court's denial of defendants' motion to suppress certain evidence based on the contention that the evidence was obtained in violation of Fed.R.Crim.P. 41(a). *United States v. McKeever*, 894 F.2d 712 (5th Cir.1990). Upon reconsideration en banc, this court reversed this determination by the panel, and remanded the case to the panel for consideration of defendants' remaining arguments that the panel did not reach in its first opinion. 905 F.2d 829. We address those arguments below.

## I.

The facts of this case are fully developed in the original panel opinion and we adopt them as set out there. *McKeever*, 894 F.2d at 713–14.

## II.

Defendants raise two challenges to the validity of the search warrant which authorized the seizure of evidence, introduced at trial, of their drug activities. First, they contend that the warrant was not issued by a neutral and detached magistrate. Second, they argue that the warrant was not supported by probable cause.

## A.

Whether there is probable cause for a search warrant to issue must be determined "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). Defendants maintain that Judge McBurney was neither neutral nor detached because she had some police training and was a former reserve police officer, her husband was a reserve deputy, and she visited the scene of the search.

■ A magistrate's former involvement in law enforcement activities does not destroy her neutrality and detachment with respect to a particular investigation. *See United States v. DeLuna*, 763 F.2d 897, 907–08 (8th Cir.), *cert. denied* sub nom., *Thomas v. United States*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985); 2 W. LaFave, *Search & Seizure* § 4.2(a), at 155 (2d ed. 1987). Here there was no showing that Magistrate McBurney was active in law enforcement activities at the time she issued the warrant. McBurney testified that she had terminated her reserve officer status; even if she was certified as a reserve officer, a magistrate may retain certain law enforcement duties without losing her neutrality. *See United States v. Haywood*, 464 F.2d 756, 760–61 (D.C.Cir.1972); *Wallis v. O'Kier*, 491 F.2d 1323, 1325 (10th Cir.), *cert. denied*, 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974).

■ The fact that McBurney's husband was a reserve deputy with the Kaufman County Sheriff's Department, did not, alone, make her an interested party. There is no indication in the record that her husband was present when McBurney issued the warrant or that he participated in the search.

■ Finally, while we agree that McBurney's visit to the site of the search is troubling, she testified that at the time she went, she understood that the news media had been called, which was after the premises were secured and the arrests were made. She was apparently curious about

an amphetamine lab generally and viewed the premises because of this curiosity; she did not in any way assist with the search. This court has stated that "[t]he fact that the [official issuing the warrant] accompanied the officers on the raid is not sufficient to impugn his neutrality or detachment.... It may indeed be a healthy interest on the part of a judge or magistrate actually to see the manner in which his orders are carried out." *United States v. Duncan,* 420 F.2d 328 (5th Cir.1970). McBurney's presence does not display sufficient indicia of an interest in the investigation to suppress the evidence. Cf. *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 327–28, 99 S.Ct. 2319, 2324–25, 60 L.Ed.2d 920 (1979).

We conclude that Magistrate McBurney's former position as a reserve peace officer, her husband's position as a reserve deputy, and her visit to the site of the search did not affect her objectivity such that she was no longer neutral and detached.

### B.

■■■ Defendants next argue that the warrant was not supported by probable cause and that the officers did not execute the search with a good faith belief that there was probable cause. The district court found that there was probable cause for issuing the warrant. A reviewing court is charged with insuring that the magistrate had a " 'substantial basis' " for determining that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 reh'g denied, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983), *citing Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960).

There was a substantial basis for finding probable cause in this case. First, a reliable and knowledgeable informant sold a large quantity of ice to two individuals who smelled of amphetamine. The informant then followed one of these individuals to the site of the search. Next, officers, experienced in drug detection, visited the secluded premises of the search and smelled the aroma of cooking amphetamine. Dis-

tinctive odors, detected by those qualified to know them, may alone establish probable cause. *Johnson,* 333 U.S. at 13, 68 S.Ct. at 368; *United States v. Villarreal,* 565 F.2d 932, 937, reh'g denied, 570 F.2d 949 (5th Cir.), cert. denied sub nom., *Almand v. United States,* 439 U.S. 824, 99 S.Ct. 92, 58 L.Ed.2d 116 (1978). There were no buildings nearby or other apparent sources of the odor. These facts certainly support a finding that probable cause existed.

### III.

Defendants assert that the district court committed two errors in calculating the sentence under the Guidelines and that we, therefore, must remand for resentencing. In particular, they contend that the district court's determination of the heroin equivalent of the controlled substances seized during the search was clearly erroneous and that it was improper to charge Newman with possession of firearms discovered during the search. McKeever does not challenge the increase in his sentence for possession of firearms. We review the district court's sentencing under the clearly erroneous standard. *See* 18 U.S.C. § 3742(d).

### A.

We first address the manner in which the district court determined the sentences.

In calculating Newman's sentence under Guidelines § 2D1.1, the court held his base offense level to be 32, based upon the quantity of controlled substances seized. It then increased this figure by two levels for possessing a firearm in furtherance of the offense. The court also added two levels for Newman's role in organizing the crime and subtracted two for his acceptance of responsibility; his final offense level was thus 34. The recommended sentencing range shown for this level for someone, such as Newman, who has no criminal history, is 151–188 months. Rather than sentencing Newman within this range, however, the district court chose to depart from the Guidelines and impose a lesser sentence of 130 months, concluding that

the firearm and leadership adjustments, although called for by the Guidelines, were unduly harsh in this case.

In determining Rocky McKeever's sentence, the court made the same calculations as for Newman. In addition, it assessed a two-level increase, pursuant to Guidelines § 3C1.1, for obstructing justice. Rocky McKeever thus had a total offense level of 36. The sentencing range shown for this level is 188–235 months; the district court sentenced Rocky McKeever to a term of 216 months.

### B.

 The trial court determined the amount of controlled substance seized according to the calculations set out in Guidelines § 2D1.1. The record reflects that two large flasks containing twenty-six liters of a substance containing detectable amounts of phenylacetone were seized. This is equivalent to 26,000 milliliters or 26,000 grams under the *Measurement Conversion Table* of § 2D1.1. The 26,000 grams of the substance was then multiplied by .075 to determine the heroin equivalent. Guidelines § 2D1.1, *Drug Equivalency Tables*. The result is 1950 grams of heroin equivalent. The district court found a heroin equivalent of 1968.042 grams which apparently accounted for small amounts of additional controlled substances seized. The district court then properly applied the *Drug Quantity Table* of Guidelines § 2D1.1 which indicates that the base offense level for this amount of heroin equivalent is 32.

In contending that the district court improperly calculated the amount of heroin equivalent involved, defendants rely upon Application Note 2 to Guidelines § 2D1.4, which provides that:

> Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, ... the size or capability of any laboratory involved.

Defendants argue that the amount of controlled substance calculated by the district judge does not, and cannot, reflect the scale of the offense because the laboratory in question was incapable of producing the quantity in question.

Defendants' argument is not persuasive because Note 2 is modified by a more specific Guidelines provision concerning the calculation of the amount of controlled substance. Section 2D1.1 instructs that "if any mixture of a compound contains any *detectable amount* of a controlled substance, the entire amount of the mixture or compound shall be considered in measuring the quantity." (emphasis added). See *United States v. Taylor*, 868 F.2d 125, 127–28 (5th Cir.1989). We interpret Note 2, when read with § 2D1.1, to mean that in most cases where a compound containing a detectable amount of controlled substance has been seized, the total weight of this compound will be considered. Note 2 comes into play primarily where, in an attempt or conspiracy offense, the quantity of controlled substances seized underrepresents that which is likely involved, not where, as here, this amount arguably overstates the actual quantity. Moreover, Note 2 merely suggests that the sentencing judge *may* consider laboratory capacity, not that he or she must do so. Furthermore, this court has held that a defendant is not entitled to a reduction in offense level because of low purity of the substance seized. *United States v. Davis*, 868 F.2d 1390, 1393 (5th Cir.1989).

Finally, the Guidelines do make some accommodation for the fact that the phenylacetone seized is not the equivalent of fully processed amphetamine. See Guidelines § 2D1.1, *Drug Equivalency Tables* (1 gram of phenylacetone is equivalent to 0.075 grams of heroin). In this case, the adjustment did not fully work to defendants' advantage, as they were caught with a diluted amount of a component substance (phenylacetone) that, being diluted, could not have produced the corresponding amount of amphetamine. Defendants' contention ignores the fact that phenylacetone is itself a controlled substance that, under the Guidelines, is converted, like all other

controlled substances, directly into a heroin equivalent.

### C.

■ The second challenge to the sentence is that the district court erred in assessing Newman a two-level increase, pursuant to Guidelines § 2D1.1(b)(1), for possessing firearms in furtherance of the offense. This "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Guidelines § 2D1.1, Application Note 3. Relying upon this language, Newman maintains that the subject weapons were not present, were not connected with the offense, and were not in his possession.

Eight firearms were found scattered throughout the house. While it is true that none of these weapons was discovered in the laboratory area, the judge was entitled to infer that they were still "present" within the meaning of Application Note 3. Because materials used for processing amphetamine were found in many areas of the house, the judge was entitled to conclude that the whole premises became the situs of the offense.

For similar reasons, the judge was entitled to find that the firearms were connected with the offense. Where several guns, including semi-automatic assault weapons, are found on the premises of a drug laboratory, the obvious inference is that they were there to protect the unlawful activity. See *United States v. Lippner*, 676 F.2d 456, 463 (11th Cir.1982). By way of contrast, Note 3 uses, as an example of an improbable relationship, the case of an unloaded deer rifle locked in a closet.

Finally, Newman argues he did not possess any of the guns, even if they were present and connected with the offense. He notes that co-defendant Rocky McKeever claimed ownership of some of the weapons. However, this fact is not dispositive. The fact that McKeever did not claim ownership of all of the weapons supports the inference that someone else, such as Newman, possessed some of the unclaimed guns. This inference is bolstered by the fact that Newman was living with McKeever at the residence and was heavily involved in the drug processing activities occurring therein. Under the circumstances, the district court was justified in concluding that Newman possessed at least one of the weapons.

### IV.

We conclude that the warrant, under which the evidence of defendants' drug activities was seized, was constitutionally valid. Magistrate McBurney was sufficiently neutral and detached and issued the warrant based on probable cause. Finally, the sentences imposed by the district court were not clearly erroneous.

AFFIRMED.