**Charlene LEATHERMAN, et al., Plaintiffs–Appellants,**

v.

**TARRANT COUNTY NARCOTICS INTELLIGENCE AND COORDINATION UNIT, et al., Defendants–Appellees.**

**No. 93–1742.**

United States Court of Appeals, Fifth Circuit.

Aug. 5, 1994.

---

Richard Gladden, Denton, TX, for appellant.

Van Thompson, Jr., Asst. Dist. Atty., Fort Worth, TX, for Tarrant County.

Tim G. Stalla, Wayne K. Olson, Fielding, Barrett & Taylor, Ft. Worth, TX, for City of Lake Worth.

Kevin J. Keith, Fowler, Wile, Norton & Keith, Dallas, TX, for City of Grapevine.

Before JOHNSON, BARKSDALE and DeMOSS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

This second appeal of an action that has travelled to the Supreme Court concerns an adverse summary judgment on § 1983 unreasonable search and seizure claims, with the issues here focusing primarily on discovery and summary judgment procedure, rather than the merits. (The one exception is whether the detection of odors associated with drug production furnished probable cause for two search warrants.) Once the procedural morass is sorted out, it is most obvious that summary judgment, as well as the preliminary steps by the district court to dispose of all claims without further cost and delay (to include considering summary judgment *sua sponte* as to the defendant Cities), was more than appropriate. We AFFIRM.

## I.

On the first appeal, our court presented a comprehensive review of the allegations in the complaint (amended). *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 954 F.2d 1054, 1055–57 (5th Cir.1992), *reversed,* —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). For this appeal, the Supreme Court's brief statement suffices:

This action arose out of two separate incidents [in May 1989 in the City of Lake Worth, and January 1989 in the City of Grapevine, both in Tarrant County, Texas] involving the execution of search warrants by ... [county and city] law enforcement officers. Each involved the forcible entry into a home based on the detection of odors associated with the manufacture of [methamphetamine]. One homeowner claimed that he was assaulted by the officers after they had entered; another claimed that the police had entered her

home in her absence and killed her two dogs.

— U.S. at ——, 113 S.Ct. at 1161.

The homeowners brought this action in late 1989, as amended in early 1990, claiming unreasonable search and seizure under the Fourth and Fourteenth Amendments. Sued, among others, were the Tarrant County Narcotics Intelligence and Coordination Unit (TCNICU), Tarrant County, and the Cities of Lake Worth and Grapevine.[1] (TCNICU was involved in both searches, and apparently was responsible for obtaining the warrants. Grapevine officers apparently accompanied TCNICU on one search; Lake Worth officers, on the other.)

The action is premised on two claims: failure to train officers properly on the execution of search warrants, especially when confronted by a family dog (training claim); and TCNICU's custom or policy to request search warrants based solely on the detection of odors associated with the manufacture of drugs (search warrant claim). It bears emphasis that the search warrant claim was not made against the Cities.

In early 1991, the district court dismissed this action because the complaint failed to satisfy the "heightened pleading requirement" our court imposed, *inter alia*, on § 1983 claims against municipalities. In the alternative, it granted summary judgment. Our court affirmed, relying solely on the heightened pleading requirement, 954 F.2d at 1058 & n. 6 ("The district court ruled, in the alternative, that summary judgment was appropriate and that no further discovery was necessary. Because we hold that the district court properly dismissed the complaints based on the insufficiency of the allegations, we need not reach the other issues raised.").

The Supreme Court reversed, invalidating the pleading requirement insofar as municipalities are concerned. — U.S. at ——, 113 S.Ct. at 1161–63. Accordingly, in June 1993, our court remanded the case to the district court, 993 F.2d 1177, which adopted its earlier summary judgment. It did so within a month of the remand order, without requesting additional briefing or argument.

## II.

The procedural posture of this action, as well as the fact that only one of the two claims is against the Cities, must be kept in focus. Although this action is before us for the second time, it is as if it were here for the first, because it is the 1991 summary judgment (alternative basis for dismissal before first appeal) that is at issue.[2] In short, no issues spring from the procedure followed on remand by the district court in 1993; the issues concern the district court's rulings— procedural and substantive—in granting summary judgment in 1991.

In that light, and concerning Tarrant County and TCNICU, the homeowners challenge the summary judgment on the merits only as to the search warrant claim. For both claims (search warrant and training), they raise related procedural issues regarding a protective order awarded those two defendants and the district court's refusal to grant a continuance. (Restated, they do not challenge on the merits the ruling on the training claim.) Concerning the Cities, the homeowners challenge the *sua sponte* summary judgment granted the Cities (training claim), but only from a procedural slant; they do not contest the ruling on the merits.

For purposes of reviewing the procedural challenges, an overview of the motions in issue is in order. In sum, the homeowners were faced from the start with summary judgment. After the amended complaint was filed in March 1990, TCNICU and Tarrant County moved for summary judgment less than a month later, and moved for a protective order that June, in response to the

1. Defendants Tim Curry (TCNICU's Director) and Don Carpenter (Sheriff of Tarrant County) were dismissed because they were sued only in their official capacity. The homeowners do not challenge the dismissals.

2. On remand, the district court noted that the "Supreme Court's disapproval related only to the Rule 12(b)(6) reason for dismissal [heightened pleading standard]", and stated that the reasons for the original, alternative summary judgment "remain unimpaired". It concluded that those reasons should "continue to be given effect".

homeowners' amended document request concerning the TCNICU search warrant policy.

In less than two weeks, the homeowners responded to the summary judgment motion and moved for a continuance on it, asserting that they had "not had a reasonable opportunity to discover information ... essential to" oppose summary judgment. In late July, the homeowners supplemented their response to the summary judgment motion. The motion to file the supplemental response recited that, because of a discovery dispute regarding the requested protective order, they "continue to maintain ... that consideration of the [search warrant claim] issue [ ] ... should not be addressed at this time"; however, the homeowners also noted that, "with the filing of this [supplemental response], [they] no longer have objection to the Court's consideration of the issues", other than the search warrant claim, to which the summary judgment motion pertained. The supplemental response was conclusory, maintaining that the attached affidavits (made by the homeowners regarding the facts relating to the searches) demonstrated material fact issues. (In later addressing these affidavits, the district court noted that the affidavits, restricted as they were to the homeowners' knowledge, "[a]t most ... raised issues of impropriety on the part of the individual officers who participated in the raids. Quite clearly, this does not create an issue of liability on the part of the public entity defendants.")

Early in August 1990, the case was reassigned to another judge; in late December, he granted the protective order. And, in late January 1991, the continuance was denied; summary judgment (alternative to heightened pleading ruling) was awarded all defendants. Prior to the dismissal, however, the homeowners had continued to take discovery (apparently, they deposed TCNICU officials).

## A.

In challenging the summary judgment awarded TCNICU and Tarrant County, the homeowners raise one substantive and two procedural issues.

### 1.

For their one challenge on the merits, the homeowners contest the search warrants requested by TCNICU on the basis of odors associated with the operation of a clandestine methamphetamine laboratory, contending that this fails to describe an odor "sufficiently distinctive to identify a forbidden substance." *See Johnson v. United States,* 333 U.S. 10, 13, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948):

> If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character.

For their challenge to the search warrant claim summary judgment, it is not clear whether the homeowners are asserting a lack of probable cause for the two warrants used for their residences, or are challenging the TCNICU custom or policy of requesting search warrants based on odors, or both.[3] In any event, this action contests only the warrants used for the two homes; the homeowners seek only money damages and do not seek to enjoin the custom or policy. In sum, the custom or policy is cited as a means of seeking to extend liability to TCNICU/the County. *See Monell v. Department of Soc. Serv. of City of N.Y.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978) ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983.")

---

**3.** As is well-established, we review the search warrant claim summary judgment freely. *See, e.g., Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 809 (5th Cir.1991). Summary judgment is appropriate when, viewing the evidence in a light most favorable to the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56.

In *United States v. McKeever*, 906 F.2d 129 (5th Cir.1990), *cert. denied*, 498 U.S. 1070, 111 S.Ct. 790, 112 L.Ed.2d 852 (1991), not cited by the parties to this issue, our court upheld a search warrant requested on the basis of odors:

> There was a substantial basis for finding probable cause in this case. First, a reliable and knowledgeable informant sold a large quantity of ice to two individuals who smelled of amphetamine. The informant then followed one of these individuals to the site of the search. Next, officers, experienced in drug detection, visited the secluded premises of the search and smelled the aroma of cooking amphetamine. *Distinctive odors, detected by those qualified to know them, may alone establish probable cause.* There were no buildings nearby or other apparent sources of the odor. These facts certainly support a finding that probable cause existed.

*Id.* at 132 (emphasis added; citations omitted).[4]

Obviously, whether probable cause exists is fact specific. But, because the opinion does not mention whether the purchase of a large quantity of ice has any relevance to the production of methamphetamine (and thus to probable cause), and given the explicit reliance on odors (both when the ice was purchased and at the site of the search), we read *McKeever* to hold that probable cause existed for a search warrant when law enforcement officers, familiar with the odors of cooking methamphetamine, identified such odors as being emitted from a particular location.[5] *See also United States v. Sweeney*, 688 F.2d 1131, 1135–36 (7th Cir.1982) (law enforcement officer's identification of odor of chemical (methylamine) associated with production of methamphetamine, when officer is familiar with odor, establishes sufficient basis for neutral magistrate to issue warrant); *cf. United States v. Mueller*, 902 F.2d 336, 339–40 (5th Cir.1990) (officer entitled to protection of good-faith exception when executing warrant issued on basis of officer's identification of methamphetamine odor and bystander's statement that "the odor was methamphetamine"; such warrant possesses adequate "indicia of probable cause" for good-faith purposes).

■ The affidavit supporting the request for the search warrant for the Lake Worth residence recited that an officer familiar with the odors associated with the production of methamphetamine (through experience and training) had "smelled a strong chemical odor associated with the manufacturing of amphetamines" apparently coming from near

---

**4.** The panel in *McKeever* was hearing the case on remand from our *en banc* court. *See United States v. McKeever*, 905 F.2d 829 (5th Cir.1990) (en banc) (reversing prior panel on application of Fed.R.Crim.P. 41). The earlier, vacated panel decision noted that twice in one day the defendants had purchased 180 pounds of ice. *United States v. McKeever*, 894 F.2d 712, 713 (5th Cir. 1990).

**5.** The homeowners rely on *United States v. Engelking*, No. 90–1060 (5th Cir. Sept. 6, 1990) (unpublished; disposition reported in table at 914 F.2d 254), involving a claim that evidence obtained pursuant to a search warrant issued "exclusively on the smell of ether as the pivotal fact in establishing a belief that methamphetamine was being manufactured" should have been excluded. *Engelking*, slip op. at 9. Our court disagreed with the characterization of the "pivotal fact":

> We need not decide whether we would agree with the Ninth Circuit that the smell of ether, standing alone, would be insufficient to establish probable cause for the issuance of a search warrant, or whether the good-faith exception

should apply, because it is clear that the affidavit in this case established probable cause for the issuance of a search warrant.... [The] affidavit did not rely solely on the smell of ether to establish probable cause.

*Id.* at 9–10.

Our court's reference to the Ninth Circuit concerned *United States v. Tate*, 694 F.2d 1217, 1221 (9th Cir.1982) (*"Tate I"*), *vacated*, 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 873 (1984), *on remand*, 795 F.2d 1487 (9th Cir.1986) (*"Tate II"*), which held "that the smell of a noncontraband substance [ether] having a number of legitimate uses, standing alone does not establish probable cause to search a residence." The Supreme Court vacated *Tate I* for further consideration in light of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (establishing good-faith exception to exclusionary rule). In *Tate II*, the Ninth Circuit held that the officers acted in good faith. 795 F.2d at 1488, 1492.

The homeowners assert that the issue they raise is the same as that "noted, but not reached" in *Engelking*. But, the record does not support the implication that the instant warrants were requested solely because of the smell of ether.

the residence. He sought help in isolating the source of the odor from another officer, and a TCNICU investigator also was called. All three smelled the odor, and determined that it originated from the residence. Later that day, a fourth officer walked through the area, and he too "smelled a strong chemical odor associated with the manufacturing of amphetamines." According to this fourth officer, the "odor was very strong around the residence".

Likewise, the affidavit requesting the search warrant for the Grapevine residence stated that an officer familiar with odors associated with methamphetamine production detected the "odor of an amphetamine laboratory". That officer and another (who also was familiar with the odor—both officers were narcotics investigators and "had been present on several occasions when warrants were executed on operating amphetamine laboratories") both "positively identified the suspected place ... as the source of the odors."

In short, the affidavits did far more than simply refer to odors. And, they described those odors, with specificity. Because "[d]istinctive odors, detected by those qualified to know them, may alone establish probable cause", the search warrants in issue comport with the Fourth Amendment. *See McKeever*, 906 F.2d at 132. As reflected in parts II.A.2. and 3. *infra*, additional discovery would not create a material fact issue. And, TCNICU/Tarrant County are entitled to judgment as a matter of law. Therefore, summary judgment on this claim was proper.

2.

The homeowners challenge the protective order granted Tarrant County and TCNICU against the homeowners' request for documents relating to the execution of search warrants initiated in response to the detection of odors associated with illegal drug laboratories.[6] The district court found that the defendants would be subjected "to undue burden, expense and annoyance, and [that] there would be a serious risk that the law enforcement efforts of the defendants ... would be inappropriately compromised if the discovery sought by plaintiffs were to be allowed."

Needless to say, a district court can "exercise its sound discretion to restrict what materials are obtainable" in discovery. *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir.1985), *cert. denied*, 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986); *see also* Fed.R.Civ.P. 26(c). And, when reviewing a protective order, we review only for an abuse of that discretion. *Harris*, 768 F.2d at 684. It is also well to remember that

[d]etermining that the district court erred when it entered the protective order does not end our inquiry. In reviewing a district court's curtailment of discovery under the Federal Rules of Civil Procedure, errors made with regard to the allowance of discovery do not require reversal unless they result in substantial prejudice to a party's case.

*United States v. Garrett*, 571 F.2d 1323, 1326 (5th Cir.1978) (citations omitted).

Even were we to assume that the district court abused its discretion in issuing the protective order, no reversible error can be found. The warrants passed Fourth Amendment muster; therefore, the materials sought to be discovered would be unavailing. In sum, because the homeowners cannot demonstrate "substantial prejudice" as a consequence of the discovery curtailment, any error is harmless. *See id.*

---

6. The protective order motion related to the following document request:

Any and all documents relative to applications for "search and arrest" warrants, including but not limited to the "search and arrest" warrants themselves, the "search and arrest" affidavits, and the returns indicating the results of the execution of such warrants, since the formation of the [TCNICU] in 1988, which

were initiated as a result of the detection of "odors associated" with the operation of an illegal drug manufacturing laboratory; and
  a. were prepared at the request of or by members of the [TCNICU], or
  b. which resulted in the issuance of search or arrest warrants in which personnel of the [TCNICU] participated in executing such search or arrest warrants in either a primary or secondary capacity.

### 3.

■ For their final attempt to set aside the summary judgment awarded Tarrant County and TCNICU, the homeowners challenge the denial of their request for a Fed. R.Civ.P. 56(f) continuance.[7] The request was filed on July 23, 1990; summary judgment was not granted until six months later—January 22, 1991. (The denial was included in the opinion granting summary judgment.)[8] In support of the continuance request, homeowners' counsel stated (by affidavit) that relevant documents remained in the possession of Tarrant County and TCNICU, but he neither identified the documents nor stated how they would help create a material fact issue (the affidavit appeared to focus primarily on the search warrant claim).[9] In denying the continuance, the district court ruled that there was no good reason for the failure to develop evidence on the issues, especially those other than the search warrant claim.[10]

"We review the district court's decision to preclude further discovery prior to granting summary judgment for abuse of discretion."

*Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1441 (5th Cir.1993) (citations omitted).

To obtain a continuance of a motion for summary judgment in order to obtain further discovery, a party must indicate to the court by some statement, preferably in writing (but not necessarily in the form of an affidavit), why he needs additional discovery and *how* the additional discovery will create a genuine issue of material fact. The nonmoving party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts."

*Id.* at 1442 (citations omitted; emphasis in original).

We have already upheld summary judgment on the search warrant claim; only the training claim remains. (Again, insofar as TCNICU and the County are concerned, the summary judgment on that claim is not challenged on the merits; the challenge rests only on the continuance denial.) Therefore, as for the training claim, and keeping in mind the specificity required for obtaining a Rule 56(f) continuance, the refusal to grant a continuance did not constitute an abuse of

---

**7.** Rule 56(f) provides:

Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**8.** This claim constitutes the only assignment of error that in any way relates to the summary judgment for Tarrant County and TCNICU on the training claim. The homeowners do not contend that there is a material fact issue as to that claim on the record as it stands. Put differently, in the light of the record, they do not challenge the summary judgment on its merits as to that claim.

**9.** The affidavit provided in pertinent part:

At the present time virtually all of the evidence material to [the homeowners'] claims concerning the training and supervision of police personnel employed by Defendants Tarrant County and [TCNICU] remain in the exclusive possession of these Defendants. Documents sought by Plaintiffs in their Request for Production of Documents, and Plaintiffs Amended Request for Production of Documents, have yet to be produced by Defendants and these documents are relevant not only to the various

issues of "practice" or "custom" of the Defendants, but also bear on the issue of the validity of the search warrants being challenged by Plaintiffs.

Plaintiffs' counsel has sought to accommodate defense counsel's concerns with respect to the "confidentiality" of the discovery sought, but these efforts have thus far been of no avail.

**10.** The district court stated:

This suit was filed in December 1989, and plaintiffs have had ample opportunity to engage in full discovery since then. The document production request to which plaintiffs refer is limited to documents that indicate the results of execution of search warrants, since the formation of TCNICU, that were initiated ... because of the detection of odors associated with the operation of an illegal drug manufacturing laboratory. Obviously, any inability of plaintiffs to acquire documents bearing on that limited subject provides no excuse for failure of plaintiffs to develop evidence in response to the motion for summary judgment, if any was available to be had. Plaintiffs have known since December 1989, when TCNICU and Tarrant filed their first motion for summary judgment, that there was a need to develop and put in the record whatever summary judgment evidence could be developed in support of plaintiffs' claims.

discretion. As noted, the homeowners had ample time in which to undertake discovery as to the defendants' training practices. Undaunted by pending, dispositive motions, they apparently filed no document requests relating to training, although, as noted, they apparently did depose TCNICU officials. Perhaps for this reason, "[t]he affidavit filed by [the homeowners'] counsel *did not state how* further discovery would have aided his cause of action, and thus, [the homeowners have] failed to demonstrate that further discovery would be anything other than a 'fishing expedition.' " *See id.* at 1443 (emphasis in original).

■ The homeowners contend that they had an arrangement with the defendants to not seek additional discovery pending disposition of the protective order motion. From this, they contend that the 22 days between the protective order and summary judgment were inadequate for discovery. The record, however, is singularly devoid of evidence that there was some arrangement between the parties to stay *all* discovery pending disposition of the protective order motion. If anything, the record implies that the homeowners' counsel made a unilateral decision to forego discovery pending the disposition of that motion.[11] And, as discussed, the homeowners, in their supplemental response to the summary judgment motion, objected only to consideration of the search warrant claim; they represented that they "no longer have objection to the Court's consideration" of other issues. Finally, as discussed *infra*, the mere complaint that more discovery is needed, by itself, does not justify a Rule 56(f) continuance.

■ The homeowners also contend that they were entitled to rely on the scheduling order, which permitted discovery to continue until May 1991 (summary judgment was granted that January). In assessing this contention, we proceed from an obvious first principle: "Rule 56 does not require that *any* discovery take place before summary judgment can be granted; if a party cannot adequately defend such a motion, Rule 56(f) is his remedy." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir.1990) (citations omitted; emphasis added). Thus, that more time was scheduled for discovery does not, by itself, defeat summary judgment. The homeowners must satisfy Rule 56(f), a rule which "may not be invoked by the mere assertion that discovery is incomplete; the opposing party must demonstrate 'how the additional time will enable him to rebut the movant's allegations of no genuine issue of material fact.' " *Id.* at 1286 (citations omitted); *see also id.* ("[T]he nonmovant's 'casual reference to the existence of ongoing discovery falls far short of showing how the desired time would enable it to meet its burden in opposing summary judgment.' ") (quoting *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 833 (10th Cir. 1986)).

The homeowners cannot inform us with any degree of specificity how additional discovery will create a material fact issue. Their Rule 56(f) continuance request, as the district court correctly perceived, turned solely on their inability to obtain the documents relating to the search warrant claim, only one of the two claims in issue. Moreover, the record suggests that the homeowners had not been diligent in pursuing

---

11. The homeowners have supplemented the record with a letter from their counsel to counsel for Tarrant County and TCNICU, which, according to the homeowners, proves the alleged agreement. The letter, drafted May 22, 1990, purported to confirm an agreement, which apparently provided that the defendants would have 14 days in which to respond to the document request pertaining to search warrants issued on the basis of odor, and that the homeowners' time to respond to the summary judgment motion would be extended for 21 days following either the production of such documents or resolution of an objection to their production by the court.

We fail to see how this letter supports the homeowners' position. As discussed, the issue of the production of search warrants did not preclude discovery on the training claim (and there were pending dispositive motions on that claim). Moreover, the district court, by the homeowners' own calculation, waited three weeks after granting the protective order before entering summary judgment. *See also Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 102 (5th Cir.) (affirming denial of Rule 56(f) continuance, recognizing that "plaintiffs were not … entitled to have the trial judge rule on the motions in any particular order"), *cert. denied*, 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990).

discovery. The summary judgment motion was filed in April 1990; the homeowners' inability to identify a material fact issue by January 1991 (and their apparent failure to request any documents other than those pertaining to the warrants), much less identify how additional discovery would lead to the creation of such an issue, reflects a lack of diligence in discovery. Obviously, this colors our view of a Rule 56(f) continuance request. *See International Shortstop v. Rally's, Inc.,* 939 F.2d 1257, 1267 (5th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992); *see also C–B Kenworth, Inc. v. General Motors Corp.,* 118 F.R.D. 14, 16 (D.Me.1987) ("Only parties who have diligently pursued discovery are entitled to the protections afforded under Rule 56(f)."), *cited and quoted with approval in International Shortstop,* 939 F.2d at 1267.

As noted, the homeowners undertook no discovery of which we are aware, other than the document request relating to search warrants, for more than one year; only shortly before the summary judgment did they apparently depose some TCNICU officials. The district court did not abuse its discretion in denying the Rule 56(f) continuance.

### B.

The homeowners' final protest is to the summary judgment awarded *sua sponte* to the Cities. They assert that because neither City moved to dismiss (much less for summary judgment), there was no motion which could be converted into one for summary judgment;[12] and, in any event, that the court's failure to provide adequate notice prior to entering summary judgment precluded its doing so.

The first assertion is simply wrong. "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte* ". *Celotex Corp. v. Catrett,*

477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see also NL Indus., Inc. v. GHR Energy Corp.,* 940 F.2d 957, 965 (5th Cir.1991) ("Rule 56(c) ... permits a court to grant summary judgment in favor of a party that did not request it"), *cert. denied,* — U.S. —, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992).

■■■ Of course, the power to enter summary judgment *sua sponte* is tempered by the requirement to provide prior notice. *See Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554 (noting power of district court to enter summary judgment *sua sponte,* "so long as the losing party was on notice that she had to come forward with all of her evidence"); *Judwin Properties, Inc. v. United States Fire Ins. Co.,* 973 F.2d 432, 436–37 (5th Cir.1992) ("A district court may grant a motion for summary judgment *sua sponte,* provided that it gives proper notice to the adverse party. Judwin was entitled to receive 10 days notice before the district court granted summary judgment.") (citations omitted); *NL Indus.,* 940 F.2d at 965 ("the district court in this case could not grant summary judgment against NL without notifying NL at least ten days in advance that it intended to do so"); *see also* Fed.R.Civ.P. 56(c) (requiring that summary judgment motion be served "at least 10 days before the time fixed for the hearing"). Thus, we turn to the inadequate notice assertion. The Cities did not file summary judgment motions, and the court did not notify the homeowners that it was considering summary judgment for the Cities. Therefore, the homeowners did not receive the notice to which they were entitled.[13]

"This court has strictly enforced the ten day notice requirement of Rule 56(c)." *Powell v. United States,* 849 F.2d 1576, 1579 (5th Cir.1988) (footnote omitted).

[T]he strict enforcement of the notice requirement is necessary because a summary

---

12. Although Grapevine moved to dismiss the complaint in its answer, asserting, *inter alia,* that the complaint failed "to allege any policy, practice or custom on the part of the [City] which caused the alleged deprivation of civil rights", it did not file a separate motion to that effect.

13. Lake Worth contends that the homeowners were on notice because the "motion for summary

judgment filed by [Tarrant County and TCNICU] raised the very issues ruled upon by the district court." But, obviously, the issues relating to the Cities' training of their officers would turn on their own facts, which would be different from those relating to TCNICU's training procedures. In any event, because of our disposition of this issue, we need not reach this contention.

judgment is a final adjudication on the merits. Since a summary judgment forecloses any future litigation of a case the district court must give proper notice to insure that the nonmoving party had the opportunity to make every possible factual and legal argument.

*Id.* at 1579 (citation and footnote omitted). In this spirit, we have vacated summary judgments and remanded for further proceedings where the district court provided no notice prior to granting summary judgment *sua sponte*, even where "summary judgment may have been proper on the merits". *E.g., Judwin,* 973 F.2d at 437.

■ Despite the strictness with which we enforce the notice requirement, "the harmless error doctrine applies to lack of the notice required by Rule 56(c)." *Powell,* 849 F.2d at 1580; *see also Western Fire Ins. Co. v. Copeland,* 786 F.2d 649, 653 (5th Cir.1986); *Norman v. McCotter,* 765 F.2d 504, 508 (5th Cir.1985). The question is whether the training claim *sua sponte* summary judgment without notice constituted harmless error.[14]

It appears clear that error in notice is harmless if the nonmoving party admits that he has no additional evidence anyway or if, as in *Norman v. McCotter,* the appellate court evaluates all of the nonmoving party's additional evidence and finds no genuine issue of material fact.

*Powell,* 849 F.2d at 1582.

The situation in this appeal does not mirror that in *Norman v. McCotter;* the home-

owners have not submitted summary judgment evidence in an effort to prove the harmful nature of the error. Of course, regarding the Cities, they also have not *admitted* that they have no additional evidence to present.

■ But, such an admission is not required to find the error harmless. *Resolution Trust Corp. v. Sharif–Munir–Davidson Dev. Corp.,* 992 F.2d 1398 (5th Cir.1993) expanded *Powell* slightly:

When there is no notice to the nonmovant, summary judgment will be considered harmless *if the nonmovant has no additional evidence* or if all of the nonmovant's additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact.

*Id.* at 1403 n. 7 (citing *Powell;* emphasis added).

It does not appear that the homeowners have any additional evidence to offer regarding the Cities' liability; they do not identify any, and we find none in our review of the record.[15] In fact, in *Leatherman I,* our court addressed a similar concern: the district court's *sua sponte* dismissal of the Cities because of the homeowners' failure to satisfy the heightened pleading requirement. Our court found that

[a]lthough we are troubled by the absence of notice preceding the district court's *sua sponte* dismissal of the claims

---

**14.** As noted, the Cities were not parties to the search warrant claim. That claim related only to a custom or policy by Tarrant County and TCNICU. But, even if they had been, the failure to give notice prior to entering summary judgment against the homeowners on that claim would be harmless in the light of our holding on that claim.

We also note again that the absence of notice is the only challenge by the homeowners to the summary judgment for the Cities. They do not contend that the record, as it stands, establishes a material fact issue on the training claim as to the Cities.

**15.** Grapevine posits an additional basis for finding harmless error, asserting that "a municipal entity cannot be held liable for failing to train or supervise its officers when the individual officers have been exonerated of any underlying constitutional violation." While this is true, *see City of Los Angeles v. Heller,* 475 U.S. 796, 798–99, 106

S.Ct. 1571, 1572–73, 89 L.Ed.2d 806 (1986) (per curiam), the City cannot avail itself of this defense. Some of the plaintiffs in the instant case sued two Grapevine police officers involved in one of the searches at issue. One was granted judgment as a matter of law (largely because the plaintiffs did not sue him in his supervisory capacity), while the other obtained a jury verdict on the issue of qualified immunity. Our court affirmed. *Andert v. Bewley,* No. 92–1467 (5th Cir. July 21, 1993) (unpublished) (disposition reported in table at 998 F.2d 1014). Needless to say, qualified immunity does not mean that no constitutional violation occurred—only that the officer is immune. And, it is well-established that an individual officer's qualified immunity does not protect a municipality. *See Owen v. City of Independence,* 445 U.S. 622, 650–58, 100 S.Ct. 1398, 1415–19, 63 L.Ed.2d 673 (1980).

against the ... Cit[ies] ..., we nevertheless affirm the dismissal of those claims as well. Plaintiffs do not contend in this court that they are prepared to allege specific facts in an amended complaint so as to render it in compliance with our heightened pleading requirement. We conclude, therefore, that the district court's failure to notify plaintiffs of its intention to dismiss the claims against the nonmovants, in the context of this case, was harmless. *Cf. Powell v. United States*, 849 F.2d 1576, 1580–82 (5th Cir.1988) (applying harmless error test to the notice requirement under Federal Rule of Civil Procedure 56 [summary judgment] ).

*Leatherman I*, 954 F.2d at 1058 (footnotes omitted; brackets in original).

■ The situation for this second appeal differs, but only slightly; just as the homeowners were unable earlier to allege specific facts so as to comply with the heightened pleading standard, they now fail to specify *any* fact issue which should prevent summary judgment—or for that matter, even identify how additional discovery would yield such an issue. Because the homeowners have not identified a material fact issue regarding their training claim against the Cities, it would be a "useless procedure to reverse the [d]istrict [c]ourt because it did not allow ten days to elapse" before entering summary judgment. *See Oppenheimer v. Morton Hotel Corp.*, 324 F.2d 766, 768 (6th Cir.1963); *see also Powell*, 849 F.2d at 1581 (discussing *Oppenheimer* and subsequent Sixth Circuit decisions). Accordingly, the failure to provide notice was harmless.

### III.

For the foregoing reasons, the judgment is AFFIRMED.