# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 16, 2011

No. 09-10730

Lyle W. Cayce
Clerk

TOMMY TOLBERT, Ph. D., By and through his next friend Helen Tolbert,

Plaintiff–Appellant,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA; AIG CLAIMS SERVICES INC

Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Tommy Tolbert appeals from the district court's grant of summary judgment to National Union Fire Insurance Company of Pittsburgh, Pennsylvania and AIG Claims Services Inc. (collectively, National Union) with respect to his claims under the Texas Insurance Code[1] and the Texas Deceptive Trade Practices Act,[2] asserting misrepresentation and unconscionability. The

---

[1] TEX. INS. CODE ANN. §§ 541.003; 541.051(1)(A)-(B); 541.052(a), 541.061(1)-(3), 541.151(1).

[2] TEX. BUS. & COM. CODE ANN. §§ 17.46(b)(12), 17.50(a)(1)(A), 17.50(a)(3).

No. 09-10730

issues before us concern Description of Coverage documents that National Union sent to Tolbert regarding eligibility for permanent total disability benefits under two insurance policies. There were differences between the Descriptions of Coverage and the underlying policies in this regard. Affirm.

# I

Tommy Tolbert was insured under two policies issued by National Union. Both policies provide for the payment of Permanent Total Disability benefits under identical terms. Within days after issuing the policies, National Union sent Tolbert a Description of Coverage document for each policy.

Subsequently, Tolbert was injured in an automobile accident. He sustained traumatic brain injury and significant and widespread neuropsychological dysfunction and other cognitive deficits, such that he should not independently make major life decisions. Tolbert's daughter Helen Tolbert consulted the Descriptions of Coverage, concluded that her father's injuries constituted a permanent total disability, and submitted claims for benefits under both policies. National Union denied those claims based on the terms of the underlying policies, which, as noted above, differed from the Descriptions of Coverage.

In defining what constitutes permanent total disability, the Descriptions of Coverage set forth paragraphs numbered 1, 2, and 3. The policies themselves similarly set forth what constitutes total permanent disability and contain paragraphs numbered 1, 2, and 3. The only difference between the Descriptions of Coverage and the polices are that the polices have an "and" between paragraphs 1 and 2, and a semicolon at the end of paragraph 1. The Descriptions of Coverage do not have an "and" between paragraphs 1 and 2, and they have a period instead of a semicolon at the end of paragraph 1. The policies define permanent total disability as follows:

No. 09-10730

**Permanently Totally Disabled/Permanent Total Disability** as used in this rider means:

1. That the Insured has suffered any of the following:

    a.   loss of both hands or feet; or

    b.   loss of one hand and one foot; or

    c.   loss of sight in both eyes; or

    d.   loss of speech and hearing in both ears; or

    e.   loss of speech or hearing in both ears; or

    f.   Hemiplegia;or; or [sic]

    g.   Paraplegia; or

    h.   Quadriplegia; or

    I.   Uniplegia;

    "Loss of hand or foot" means complete severance through or above the wrist or ankle joint. "Loss of sight in both eyes" means total and irrevocable loss of the entire sight in both eyes. "Loss of hearing in both ears" means total and irrevocable loss of the entire ability to hear in both ears. "Loss of speech" means total and irrevocable loss of the entire ability to speak.

    "Hemiplegia" means the complete and irreversible paralysis of the upper and lower Limbs of the same side of the body. "Limb(s)" means entire arm or entire leg. "Paraplegia" means the complete and irreversible paralysis of both lower Limbs. "Quadriplegia" means the complete and irreversible paralysis of both upper and both lower Limbs. "Uniplegia" means the complete and irreversible paralysis of one Limb.

    and

2. the Insured is permanently unable to [perform usual daily activities of a person whose health is

3

No. 09-10730

comparable to that of the Insured prior to the accident]; and

3. the Insured is under the supervision of a Physician unless the Insured has reached his or her maximum point of recovery.

The Descriptions of Coverage describe the permanent total disability coverage as:

> **Permanently Totally Disabled/Permanent Total Disability** – as used in this Description of Coverage, means:
>
> 1. That the Insured Person has suffered any of the following:
>
>    a. loss of both hands or feet; or
>
>    b. loss of one hand and one foot; or
>
>    c. Hemiplegia; or
>
>    d. Paraplegia; or
>
>    e. Quadriplegia.
>
>    "Loss of hand or foot" means complete severance through or above the wrist or ankle joint.
>
>    "Hemiplegia" means the complete and irreversible paralysis of the upper and lower Limbs of the same side of the body. "Limb(s)" means entire arm or entire leg. "Paraplegia" means the complete and irreversible paralysis of both lower Limbs. "Quadriplegia" means the complete and irreversible paralysis of both upper and both lower Limbs.
>
> 2. the Insured Person is permanently unable to [perform usual daily activities of a person whose health is comparable to that of the Insured prior to the accident]; and
>
> 3. the Insured is under the supervision of a Physician unless the Insured Person has reached his or her maximum point of recovery.

No. 09-10730

The Descriptions of Coverage also include the following disclaimer:

**IMPORTANT**

This is a brief description of the coverage available under policy series C11695DBG. If any conflict should arise between the contents of this Description of Coverage and the Master Policy . . . , or if any point is not covered herein, the terms and conditions of the Master Policy will govern in all cases.

Helen Tolbert concluded, after reading the Descriptions of Coverage, that although her father's injuries were not within paragraph 1, he met the requirements of both paragraphs 2 and 3. She understood the Descriptions of Coverage to provide benefits if the insured suffered from any of the injuries or losses in paragraph 1, or alternatively, if both paragraphs 2 and 3 were satisfied.

When National Union denied coverage, Helen Tolbert filed suit in Texas state court as next friend and on behalf of her father seeking a determination that there was coverage and that there had been a bad faith denial of benefits but asserting liability under the Texas Insurance Code and the Texas Deceptive Trade Practices Act (DTPA) for misrepresentations if it was determined that there was no coverage. National Union removed the suit to federal district court on the basis of diversity jurisdiction. Tolbert's brief in this court advises us that thereafter, "[d]iscovery revealed that the policies provided no coverage," and therefore, the contractual liability and bad faith denial claims were not viable. However, based on difficulties Tolbert encountered in obtaining copies of the policies at issue from National Union, Tolbert's complaint was amended to include a claim for unconscionability under the DTPA.

National Union moved for summary judgment on the Insurance Code and DTPA claims on the ground that the Descriptions of Coverage are not materially different from the policies. National Union argued that the only reasonable

5

No. 09-10730

interpretation of the Descriptions of Coverage is that the conditions in all three numbered paragraphs must be met in order to recover benefits. The district court, applying Texas law and relying upon rules of grammar, concluded that the Descriptions of Coverage did not materially differ from the policies. The court granted National Union's motion for summary judgment and dismissed all of Tolbert's claims with prejudice.

Tolbert has appealed.

## II

We review the district court's grant of summary judgment de novo, applying the same standard as the district court.[1] Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[2] "'A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party.'"[3]

## III

As a procedural matter, Tolbert argues that the district court should not have granted summary judgment on his misrepresentation claims because National Union did not provide adequate notice of its basis for seeking summary judgment. We disagree.

In its motion for summary judgment, National Union asserted that it "made no misrepresentations to Plaintiff concerning coverage for PTD benefits."

---

[1] *Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 690 (5th Cir. 2010).

[2] FED. R. CIV. P. 56(a).

[3] *Jennings v. Owens*, 602 F.3d 652, 656 (5th Cir. 2010) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)).

No. 09-10730

National Union stated that Tolbert's misrepresentation claim was "without merit because the only reasonable interpretation of the PTD benefit language as set forth in the DOCs is that all three listed elements must be met in order to recover PTD benefits." National Union also argued that, even if the Description of Coverage documents could be interpreted differently than the policies, the disclaimer in the Descriptions of Coverage placed Tolbert on notice that the policy language would control in the event of any conflict. The briefing in the district court reflects that Tolbert defended his misrepresentation claims in detail in his response to National Union's motion for summary judgment. Tolbert's contention that he had insufficient notice of National Union's basis for seeking summary judgment on his misrepresentation claims is unsustainable.

## IV

Tolbert maintains that the Descriptions of Coverage violated the Texas Insurance Code and the Texas DTPA in a number of ways. With regard to the Insurance Code, he contends that the Descriptions of Coverage misrepresented the terms of the policies within the meaning of § 541.051(A) and (B),[4] was an "unfair or deceptive act or practice" actionable under § 541.151(1),[5] and violated

---

[4] *See* TEX. INS. CODE ANN. § 541.051(1)(A) and (B), providing:

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to:

> (1) make, issue, or circulate or cause to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued:
>> (A) the terms of the policy;
>> (B) the benefits or advantages promised by the policy . . . .

[5] *See id.* § 541.151(1), which provides:

A person who sustains actual damages may bring an action against another person for those damages caused by the other person engaging in an act or

No. 09-10730

§ 541.061(1), (2), and (3).[6]  He additionally asserts that the Descriptions of Coverage disseminated untrue, deceptive or misleading assertions, representations or statements regarding the business of insurance within the meaning of § 541.052(a).[7]  With regard to the DTPA, which is embodied in the Texas Business and Commerce Code, Tolbert contends that the Descriptions of

---

practice:

> (1) defined by Subchapter B to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance . . . .

[6] *See id*. § 541.061(1)-(3), which provide:

§ 541.061. Misrepresentation of Insurance Policy

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:

> (1) making an untrue statement of material fact;
>
> (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
>
> (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact.

[7] *See id.* § 541.052(a), which provides:

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to make, publish, disseminate, circulate, or place before the public or directly or indirectly cause to be made, published, disseminated, circulated, or placed before the public an advertisement, announcement, or statement containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance or a person in the conduct of the person's insurance business.

8

Coverage were actionable under § 17.50(a)(1)(A) of that Code[8] as a misrepresentation within the meaning of § 17.46(b)(12).[9]

The district court resolved this case based on its conclusion that the Descriptions of Coverage were not susceptible to the interpretation that benefits were payable if the insured either qualified under paragraph 1 or met the requirements of paragraphs 2 and 3.  The district court reasoned that the differences between the Descriptions of Coverage and the underlying master policies made no material difference and therefore, no misrepresentations or misleading practices had occurred.  While the interpretation of the definition of permanent total disability in the Descriptions of Coverage is a close question, we disagree with the district court's conclusion that, as a matter of law, the definition of permanent total disability in the Descriptions of Coverage unambiguously requires the disability to come within all three paragraphs.  The absence of an "and" between paragraphs 1 and 2 rendered the definition of permanent total disability ambiguous.  However, we nevertheless agree with the district court that National Union was entitled to summary judgment, although we reach that conclusion on other grounds.

The Texas courts have made clear that a disagreement about the meaning of contractual terms does not give rise to a claim for misrepresentation,

---

[8] *See* TEX. BUS. & COM. CODE ANN. § 17.50(a)(1)(A), providing:

(a) A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:

(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:

(A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter . . . .

[9] *See id.* § 17.46(b)(12) (defining "'false, misleading, or deceptive acts or practices'" to include "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve").

including a statutory claim under the DTPA.[10]  One court of appeals, although perhaps in dicta, drew a distinction between false representations, which are actionable, and disagreements as to the meaning of ambiguous contract terms, which are not: "In summary, *Leal* holds that false statements of fact concerning a party's rights under an unambiguous contract are actionable under § 17.46(b)(12), while *Group Hospital* holds that disagreements over the interpretation of a contract with uncertain terms are not actionable under this section."[11]  Tolbert has failed to cite, and we have not found, any basis under Texas law for equating an ambiguous statement about benefits payable under a policy of insurance with an unambiguous, false statement or representation about the nature of those benefits.

There can, of course, be liability under the Texas Insurance Code  for "failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made," or "making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact."[12]  However, we are not called upon to consider whether the ambiguous definition of permanent total disability in the Descriptions of Coverage, standing alone, would be actionable under either of these provisions.  That is because the definition of what

---

[10] *See Grp. Hosp. Servs., Inc. v. One and Two Brookriver Ctr.*, 704 S.W.2d 886, 889 (Tex. App.—Dallas 1986, no writ) ("Cases allowing recovery under § 17.46(b)(12) [a provision of the DTPA] uniformly predicate liability on *factual* rather than *interpretive* misrepresentations.") (citing *Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688 (Tex. 1979); *Leal v. Furniture Barn*, 571 S.W.2d 864 (Tex. 1978); *George Pharis Chevrolet, Inc. v. Polk*, 661 S.W.2d 314 (Tex. App.—Houston [1st Dist.] 1983, no writ); *Wagner v. Morris*, 658 S.W.2d 230 (Tex. App.—Houston [1st Dist.] 1983, no writ)).

[11] *Quitta v. Fossati*, 808 S.W.2d 636, 644 (Tex. App.—Corpus Christi 1991, no writ) (citing *Leal v. Furniture Barns, Inc.*, 571 S.W.2d 864, 865 (Tex. 1978); *Group Hosp. Servs., Inc*, 704 S.W.2d at 889).

[12] TEX. INS. CODE ANN. § 541.061(2)-(3).

10

No. 09-10730

constitutes permanent total disability was accompanied by other language in the Descriptions of Coverage that specifically advised that if there were any conflict between what the descriptions said and the policy, the policy controlled:

**IMPORTANT**

This is a brief description of the coverage available under policy series C11695DBG. If any conflict should arise between the contents of this Description of Coverage and the Master Policy . . . , or if any point is not covered herein, the terms and conditions of the Master Policy will govern in all cases.

This court has previously recognized that under Texas law, when a document describing what is covered by an insurance policy specifically states that the description is "subject to the terms and conditions of the master policy," "the master policy control[s] over ambiguous or contrary provisions in the certificate."[13] In one of the Texas court of appeals' decisions, *Transport Life*, cited by our court in *Fagan*, an insured was found dead in an automobile, and the pathologist determined that his death was due to accidental carbon monoxide poisoning.[14] A certificate of insurance certifying coverage and describing his underlying policy contained an exclusion that said losses were "not covered if they are a result of . . . the taking of poison or asphyxiation from inhaling gas."[15] The trial court in that case held that this exclusion should be interpreted to exclude only a voluntary ingestion of poison or inhalation of gas

---

[13] *Fagan v. Bankers Multiple Line Ins. Co.*, 669 F.2d 293, 296 (5th Cir. 1982) (citing *Wann v. Metro. Life Ins. Co.*, 41 S.W.2d 50 (Tex. Comm'n App.1931, holding approved); *Transp. Life Ins. Co. v. Karr*, 491 S.W.2d 446 (Tex. Civ.App. 1973, no writ); *Boyd v. Travelers Ins. Co.*, 421 S.W.2d 929 (Tex. Civ. App.1967, writ ref'd n. r. e.); *Equitable Life Assurance Soc'y of U.S. v. Nelson*, 396 S.W.2d 517 (Tex. Civ. App.1965, no writ); *White v. Great Am. Reserve Assurance Co.*, 342 S.W.2d 793 (Tex. Civ. App.1961, no writ)).

[14] *Transp. Life Ins. Co.*, 491 S.W.2d at 447.

[15] *Id.*

because of the words "the taking," and found coverage based on the certificate.[16] The appellate court did not disagree with the trial court's interpretation of the exclusion in the certificate of insurance but held that the master policy, not the certificate, controlled and that there could be no recovery in spite of the certificate.[17] The master policy spelled out that no accidental death benefits would be paid for death resulting from "inhaling of gas . . . whether voluntarily or involuntarily."[18]

While *Transport Life* dealt only with whether contractual benefits could be recovered, it and Texas decisions concluding that if there is an express reference to the policy, the policy governs in the case of any conflict between the policy and another document describing its coverage are instructive. When faced with an ambiguous description of benefits or coverage, a "reasonably prudent person" could not conclude that there was coverage when the ambiguous document expressly states that the policy governs any conflicting description of coverage. We are not confronted with and therefore do not consider the implications for liability under the DTPA or Insurance Code if a document unequivocally and unambiguously misrepresents the extent of coverage but states that conflicting policy provisions will control.

Tolbert contends that based on this court's decision in *Hansen v. Continental Insurance Co.*,[19] we should give no effect to the disclaimer in the Descriptions of Coverage. However, the rights of the beneficiary in *Hansen* were governed by the federal Employee Retirement Income Security Act (ERISA), not

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] 940 F.2d 971 (5th Cir. 1991).

No. 09-10730

Texas law.[20] This court noted in *Hansen* that Texas law, including the DTPA, was preempted, and that the beneficiary's only remedy was under ERISA.[21] In *Hansen*, there was a conflict between an insurance plan and the summary of the plan given to employees.[22] This court held that because the statutory language of ERISA required that a summary of a plan's coverage be given to plan participants and that such summaries must be accurate,[23] an insurer cannot disclaim the effect of the summary by stating that all rights will be governed by the master policy.[24] In the present case, ERISA does not govern Tolbert's policy, and we must apply Texas law. Tolbert can cite to no Texas authority that renders ineffective directives like that found in the Descriptions of Coverage, which expressly state that in the event of any conflict, the master policy controls.

The definition of permanent total disability in the Descriptions of Coverage is ambiguous. The Descriptions of Coverage clearly state that in the

---

[20] *Id.* at 978.

[21] *Id.* at 979.

[22] *Id.* at 981.

[23] *Id.* at 980 ("ERISA requires that plan participants be provided with an accurate, comprehensive, easy to understand summary of the plan."); *id.* at 981 ("ERISA requires, in no uncertain terms, that the summary plan description be 'accurate' and 'sufficiently comprehensive to reasonably apprise' plan participants of their rights and obligations under the plan.") (citing 29 U.S.C. § 1022).

[24] *Id.* at 982:

Ruling that the statements of the summary plan description are binding necessarily forecloses Continental's argument about this disclaimer. To give effect to such a disclaimer would wholly undermine the rule that the statements of the summary plan description are binding. Indeed, if the insurer could escape the binding effect of the summary simply by adding a disclaimer to the summary, the insurer could escape the requirement of an accurate and comprehensive summary plan description. Accordingly, this Court holds, as a necessary corollary to its holding that the statements in the summary plan description are binding, that drafters of a summary plan description may not disclaim its binding nature.

No. 09-10730

event of a conflict, the terms of the master policy control.  The ambiguity in the Descriptions of Coverage does not rise to the level of a misrepresentation within the meaning of the Texas Insurance Code or the DTPA.  To the extent that the Insurance Code would require additional information to clarify an ambiguity, the reference to the master policy as controlling adequately informs a reasonable person that an ambiguity in the Description of Coverage is not binding if it conflicts with the policy.

## V

Tolbert argues that the district court erred in granting summary judgment on his unconscionability claim because it was not addressed in National Union's motion for summary judgment.  "[W]e have vacated summary judgments and remanded for further proceedings where the district court provided no notice prior to granting summary judgment *sua sponte*, even where summary judgment may have been proper on the merits."[25]  However, "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."[26]

Tolbert amended his complaint to add a claim for unconscionability under the DTPA, alleging that National Union

> took advantage of Dr. Tolbert's lack of knowledge and experience to a grossly unfair degree by attempting to absolve National Union of liability for its misrepresentations.  In particular, the "Description of Coverage" stated that a "Master Policy" would govern in the event of any conflict with the contents of the

---

[25] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1398 (5th Cir. 1994) (quoting *Judwin Properties, Inc. V. U.S. Fire Ins. Co.*, 973 F.2d 432, 437 (5th Cir. 1992)).

[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

14

No. 09-10730

"Description of Coverage," when National Union never offered or provided any such "Master Policy" to Dr. Tolbert prior to the filing of this lawsuit.

Tolbert filed his motion to amend his complaint, along with a copy of the amended complaint, prior to the filing of National Union's motion for summary judgment, but the district court granted Tolbert's motion to amend in the same order in which it granted summary judgment to National Union.  The district court granted summary judgment to National Union on all of Tolbert's claims, but it did not specifically address the unconscionability claim.  The order stated, "Tolbert's claims based on the DOCs allegedly misrepresenting the requirements of the Master Policies fail as a matter of law."

National Union argues that any error by the district court in granting summary judgment on the unconscionable-conduct claim was harmless. "When there is no notice to the nonmovant, summary judgment will be considered harmless if the nonmovant has no additional evidence or if all of the nonmovant's additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact."[27]

To the extent that Tolbert's unconscionability claim rests on National Union's alleged failure to provide him with copies of the policies, Tolbert's response to National Union's motion for summary judgment included a section citing to attached evidence and describing his efforts to obtain copies of his policies.  He stated that he had to file suit and use the discovery process to obtain the copies.  Tolbert also fully addressed the misrepresentation issue in defense of his misrepresentation claims.

For the first time in his reply brief, Tolbert argues that if he had received notice that the district court would consider his unconscionability claim, he

---

[27] *Leatherman,* 28 F.3d at1398 (emphasis omitted) (quoting *Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp.*, 992 F.2d 1398, 1403 n.7 (5th Cir. 1993)).

would have filed excerpts from the deposition of National Union's corporate representative, who testified that the language of National Union's policies is prepared in one division, but that the Descriptions of Coverage are prepared by another division, "which purportedly had some undefined procedure to provide policies upon request." Tolbert has not offered any reasoning as to the relevance of this evidence regarding allegations of unconscionable conduct.

In any event, the Supreme Court of Texas has held that unconscionability requires that the seller take advantage of lack of knowledge, ability, experience, or capacity of a person "*at the time of the sale.*"[28]  Tolbert's unconscionability claim is premised on conduct that occurred after his injury and well after the inception of coverage under the policies. Tolbert's unconscionability claims must fail.

\*          \*          \*

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.

---

[28]  *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 441 (Tex. 1995) (citing *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985)).