**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 30, 2012

No. 11-10958

Lyle W. Cayce
Clerk

JNV AVIATION, L.L.C.,

Plaintiff-Appellee Cross-Appellant,

v.

FLIGHT OPTIONS, L.L.C.,

Defendant-Appellant Cross-Appellee.

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 1:10-CV-69

Before STEWART, Chief Judge, and DeMOSS and GRAVES, Circuit Judges.
PER CURIAM:[*]

Defendant-Appellant Cross-Appellee Flight Options, L.L.C. ("Flight Options") appeals from the district court's ruling on summary judgment that Flight Options breached its contracts with Plaintiff-Appellee Cross-Appellant JNV Aviation L.L.C. ("JNV") relating to fractional interests in two aircraft. Flight Options also appeals the district court's determination of the valuation date for assessing the Interest Repurchase Value of the fractional interests. JNV cross-appeals from the district court's determination of the Interest

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-10958

Repurchase Value and the district court's denial of attorneys' fees to JNV. We AFFIRM IN PART and VACATE AND REMAND IN PART.

## I. FACTUAL AND PROCEDURAL HISTORY

### A.     The Operative Agreements

This case involves two transactions whereby Flight Options sold fractional interests in two aircraft to JNV. The transactions are governed by "a coordinated group of agreements," which consists of two sets of Purchase Agreements, Management Agreements, Master Interchange Agreements, and Owners Agreements (collectively, the "Operative Agreements"). Our discussion focuses on the Purchase Agreements and the Management Agreements.

*1.     General Transaction Terms and the Flight Program*

On or about April 18, 2002, non-party AVJ Exploration Corporation ("AVJ") entered into the first Purchase Agreement with Flight Options, whereby AVJ purchased an 18.75% interest in a 1998 Cessna Citation Jet/525 aircraft bearing FAA Registration Number N253CW, which Flight Options owned. On or about May 1, 2002, AVJ entered into the second Purchase Agreement with Flight Options, purchasing a 6.25% interest in a 1991 Cessna Citation V-560 aircraft bearing FAA Registration Number N583CW, which Flight Options owned. The substantive provisions of the Purchase Agreements are the same. On or about October 1, 2004, AVJ transferred all of its interests in the Purchase Agreements to JNV pursuant to an Assignment and Assumption Agreement, with the approval of Flight Options. The original Citation Jet and Citation V are collectively referred to as "the Original Aircraft," and JNV's fractional interests in the Original Aircraft are referred to as the "Interests."

No. 11-10958

The Purchase Agreements also provide in Section 4.2(j) that Flight Options could require JNV to exchange its Interests in the Original Aircraft for interests in other aircraft ("Exchange Aircraft") of the same make and model.[1]

As a result of its fractional Interests in the Original Aircraft, JNV had the right to operate the two aircraft, or comparable alternative aircraft, for a set number of total hours per year. The Management Agreements govern the responsibilities of the parties under this flight program. Specifically, Section 5.1 of the Management Agreements states that Flight Options shall provide JNV with use of the Original Aircraft, or comparable alternative aircraft, for JNV's total number of allocated hours during the term of the agreements, subject to certain restrictions. Other provisions of the Management Agreements address various aspects of the flight program such as management fees, insurance, and maintenance of the aircraft.

Ohio law governs the Operative Agreements, and Flight Options drafted the agreements.

*2. Provision for Flight Options' Repurchase of JNV's Interests*

Section 4 of the Purchase Agreements provides several scenarios under which Flight Options could repurchase JNV's Interests, one of which is relevant to the disposition of this appeal. Section 4.2(d) of the Purchase Agreements states:

> At any time after 60 months from the Closing, [Flight Options] may at its discretion elect to terminate that portion of its fractional aircraft ownership program which involves aircraft of the same make and model as the Aircraft. In such event [Flight Options] shall have

---

[1] Pursuant to Section 4.2(j), JNV entered into various Exchange Agreements with Flight Options whereby the parties exchanged JNV's Interests in the Original Aircraft for interests in Exchange Aircraft. As the Interest Repurchase Value is based on the value of the Original Aircraft, these exchanges are not material to this appeal. Therefore, we refer to JNV's Interests in the "Original Aircraft" herein for simplicity even where, technically, JNV held interests in Exchange Aircraft.

3

> the option to repurchase the Interest upon 90 days' notice to [JNV] for the Interest Repurchase Value, less a 7 percent remarketing fee.

Thus, Section 4.2(d) permits Flight Options to terminate JNV's participation in the program and repurchase JNV's Interests in the aircraft.

### 3.   *Provision Regarding Determination of the Interest Repurchase Value*

In the event that Flight Options repurchases the Interests, Section 4.1 of the Purchase Agreements delineates how the parties shall determine the monetary value of JNV's Interests, which the Purchase Agreements refer to as the "Interest Repurchase Value":

> For purposes of any repurchase transaction under this Purchase Agreement, the "Interest Repurchase Value" shall be calculated in the manner set forth in this Section 4.1.  There shall first be determined the then-prevailing average fair market value ("Aircraft Value") of the Aircraft.  Aircraft Value shall be determined by mutual agreement of [JNV] and [Flight Options], or absent such agreement, by an independent appraiser mutually agreed upon by the parties, or absent agreement upon such appraiser, by a majority of three independent appraisers, one selected and paid for by [JNV], one selected and paid for by [Flight Options], and the third selected by the other two appraisers and paid in [sic] equally by [JNV] and [Flight Options]. . . . Such determination of Aircraft Value shall be made promptly enough to avoid delaying the closing of any repurchase transaction hereunder.

Thus, the Purchase Agreements provide that, in the event of repurchase, the parties shall mutually agree on the Interests' value or appoint one or more appraisers to determine the value.

### 4.   *Termination Provision of the Management Agreements*

Section 2 of the Management Agreements contains the following termination provision:

> The term of this Management Agreement . . . shall terminate (i) on the date [Flight Options] repurchases the Interest from [JNV] or the Interest is otherwise transferred from [JNV] in accordance with the terms of the Purchase Agreement, (ii) upon termination by [JNV] due to [Flight Options'] default, or (iii) upon not less than 90 days [sic] written notice by [JNV] to [Flight Options] of termination under this clause if during the 90-day period prior to the termination date specified in such notice the Additional Interest Owners[2] have also given notice to [Flight Options] of such termination.

Accordingly, the Management Agreements provide that they terminate, *inter alia*, when Flight Options repurchases JNV's Interests.

## B.     Flight Options Invokes its Option to Purchase JNV's Interests and the Subsequent Correspondence Between the Parties

By letters dated February 15, 2007, Flight Options notified JNV that it intended to terminate JNV's ownership interests in the Original Aircraft and that Flight Options was repurchasing JNV's ownership interests ("February 15th letters"):

> [W]e have decided to redeem your fractional aircraft interest (the "Interest") in the aircraft . . . . Flight Options hereby provides notice to you effective three days from the date of this letter that we are exercising our option to repurchase the Interest under Section 4.2(d) of your Purchase Agreement on ninety days' notice.

The February 15th letters also notified JNV that, pursuant to the Purchase Agreements, JNV's flying privileges would be suspended "on the earlier of ninety days from the effective date of this notice or such earlier date as may be determined by Flight Options for the closing under the Repurchase

---

[2] The Management Agreements define "Additional Interest Owners" as other parties who own or lease the remaining undivided interests in the aircraft.

Agreement[s]."[3]    Along with the February 15th letters, Flight Options transmitted proposed Repurchase Agreements for the fractional interests in the aircraft.  These proposed Repurchase Agreements offered to repurchase the aircraft interests for the terms contained therein.  The February 15th letters explained that Flight Options decided to repurchase the Interests in order to modernize its fleet by selling off its oldest aircraft as buyers' interests in these aircraft expired.  JNV did not sign the proposed Repurchase Agreements.

Flight Options' February 15th letters and repurchase offers began an exchange of correspondence between the parties.  On February 23, 2007, Flight Options informed JNV that the sale of one aircraft was pending, and that the Repurchase Agreements could be funded within thirty days instead of ninety days if JNV executed the Repurchase Agreements.  Then, on April 12, 2007, Flight Options agreed to extend JNV's flying privileges to August 1, 2007.

The parties never agreed on repurchase terms.  On April 20, 2007, Flight Options advised JNV of its rights to initiate the appraisal process.  On June 11, 2007, JNV advised Flight Options that JNV was "going to be going to Appraisal" and that JNV would "be in contact with [Flight Options] once [JNV had] all of [its] paperwork ready."  On September 5, 2007, Flight Options e-mailed JNV, noting that "it has been some time since Flight Options has received any communication with regard to JNV Aviation's intent to commit to Repurchase or move forward with an appraisal remedy to determine Fair Market Value," and requested that JNV reply.  On October 12, 2007, Flight Options sent JNV a new proposal, $543,754 minus applicable deductions, and offered "to go to appraisal if we have reached an impasse."  On March 4, 2008, Flight Options sent updated Repurchase Agreements, along with a request that JNV advise Flight Options

---

[3]  Pursuant to Section 9.4 of the Purchase Agreements, the notices became "effective on the earlier of three days following its sending or the time of actual receipt."

of its position regarding repurchase.  On September 19, 2008, Flight Options e-mailed JNV another proposal for $519,324 minus applicable deductions.

Throughout the course of this correspondence, neither party ever formally initiated the appraisal process.

On February 23, 2010, JNV's counsel sent a letter to Flight Options demanding that it acquire JNV's Interests with a valuation date of August 1, 2007.  When Flight Options refused to do so, JNV brought this suit in Texas state court on April 6, 2010.  On April 21, 2010, Flight Options removed the action to federal court.

Following cross-motions for summary judgment, the district court held that Flight Options breached the Purchase Agreements by exercising its option to repurchase JNV's Interests and then failing to follow through on the repurchase process by not invoking the appraisal remedy contained in the agreements.  The district court further held that the proper valuation date for JNV's Interests was August 1, 2007, the date that JNV's flying privileges expired.  The district court then reasoned that Flight Options' repurchase offer price dated October 12, 2007, as the offer closest in time to August 1, 2007, was the best measure of the Interest Repurchase Value.  Thus, the district court determined the Interest Repurchase Value to be $543,754 minus applicable deductions, based on the October 12th offer, and it awarded prejudgment and postjudgment interest on this amount.  The district court also ruled that JNV failed to show that it was entitled to attorneys' fees under Ohio law because both parties, not just Flight Options, were at fault for not completing the transaction.  Finally, the district court dismissed with prejudice Flight Options' breach of contract counterclaim, and, at JNV's request, the court dismissed without prejudice JNV's claims for fraudulent inducement and violations of Texas's Deceptive Trade Practices–Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.50(a)(1)(A).

No. 11-10958

## II. DISCUSSION

Flight Options appeals: 1) the district court's ruling that it breached the agreements; and 2) the district court's ruling that August 1, 2007 was the proper date for the valuation of JNV's Interests. JNV cross-appeals: 1) the district court's determination of the Interest Repurchase Value of JNV's Interests; and 2) the district court's denial of attorneys' fees to JNV.

We review a district court's grant of summary judgment *de novo.  Garcia v. LumaCorp, Inc.*, 429 F.3d 549, 553 (5th Cir. 2005).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  We also review a district court's conclusions of law, including contractual interpretations, *de novo.  Garcia*, 429 F.3d at 553.  These standards apply to all of the issues on appeal.

## A.    Flight Options' Breach of Contract

The Purchase Agreements provide that Ohio substantive law governs the breach-of-contract claims.  Under Ohio law, the elements of a breach-of-contract claim are offer, acceptance, consideration, breach, and damages.  *See, e.g.*, *Lucio v. Safe Auto Ins. Co.*, 919 N.E.2d 260, 267 (Ohio Ct. App. 2009).  The central element that is in dispute is whether Flight Options' February 15th notice to JNV was a valid acceptance of an offer.

Under Ohio law, "a contract is to be read as a whole and the intent of each part gathered from a consideration of the whole." *Saunders v. Mortensen*, 801 N.E.2d 452, 455 (Ohio 2004).  "If it is reasonable to do so, we must give effect to each provision of the contract." *Id.*  "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997)

8

(citations omitted). Further, "writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Id.* (citations omitted). Finally, a court should construe a contract strictly against the drafter and in favor of the nondrafting party. *Safeco Ins. Co. of Am. v. White*, 913 N.E.2d 426, 430-31 (Ohio 2009).

We agree with the district court that Flight Options breached the Purchase Agreements when it failed to repurchase JNV's Interests after exercising its right to do so and contemporaneously terminating JNV's flying privileges. The central dispute between the parties here is whether Section 4.2(d) of the Purchase Agreements contained a unilateral offer that, when Flight Options notified JNV that it was "exercising [its] option to repurchase" JNV's Interests, created a binding contract between the parties. JNV asserts that Flight Options' notice represented Flight Options' acceptance of JNV's unilateral offer to sell back the Interests, thereby creating a binding contract. Flight Options contends that the exercise of its option to repurchase JNV's Interests was contingent upon JNV's acceptance of the prices Flight Options proposed to pay. Flight Options also argues that it was able to change its mind about exercising its option to repurchase because of the absence of a binding contract. However, Flight Options' interpretation of the agreements contradicts well-established principles relating to option contracts.

Under Ohio law, an option becomes effective as a contract once it is accepted. *See Moss et al. v. Olson*, 76 N.E.2d 875, 878 (Ohio 1947) (holding that, where a lease provided that the lessee shall have the right to renew and extend such lease for a term of three years upon the giving of specified notice, the lessee's giving of such notice automatically extended the lease for three years); *Plickerd v. Mongeluzzo*, 596 N.E.2d 601, 606 (Ohio Ct. App. 1992) (citation omitted) ("[T]he party having the option is of course not bound to exercise it; he can withdraw from it at any time prior to the exercise thereof[.]"); *see also*

*generally* 17 Ohio Jurisprudence 3d Contracts § 30 ("An option becomes effective as a contract upon acceptance thereof[.]").

In light of the foregoing principles, it is clear to us that the Purchase Agreements contained JNV's unilateral offer to sell back its Interests to Flight Options, an offer which Flight Options accepted in the February 15th letters. Flight Options' own internal communications and sworn testimony relating to this litigation support this conclusion. Thus, once Flight Options initiated the repurchase, it was obligated to follow the process that the Purchase Agreements prescribed for determining the value of the Interests–either mutual agreement on a price or, if mutual agreement was not possible, the appraisal remedy. Flight Options breached the agreements by failing to do so. We therefore affirm the district court's grant of summary judgment to JNV on its breach of contract claim and the district court's denial of summary judgment to Flight Options on its breach of contract counterclaim.

## B.    Valuation Date for the Repurchase

We also agree with the district court that the proper valuation date for assessing JNV's Interests is August 1, 2007, when JNV's flight privileges expired. The parties dispute whether Flight Options could terminate JNV's flying privileges without also repurchasing JNV's Interests under the Operative Agreements.

As noted already, the Management Agreements terminate, *inter alia*, "on the date [Flight Options] repurchases the Interest from [JNV]."[4] In our *de novo* review, we are convinced by JNV's argument that these agreements, and thus JNV's flying privileges, would not terminate until Flight Options repurchased JNV's Interests. By terminating JNV's flying privileges on August 1, 2007,

---

[4] We note that the Management Agreements provide other triggering events for termination of the agreements; however, repurchase of JNV's Interests is the only one relevant to this appeal.

No. 11-10958

Flight Options was obligated to repurchase JNV's Interests as of that date. Moreover, Flight Options has not refuted JNV's contention that Flight Options implicitly acknowledges August 1, 2007 as the proper valuation date when Flight Options argues that its October 12, 2007 offer price is the appropriate value of the Interests because it is closest in time to August 1, 2007. Accordingly, we affirm the district court's summary judgment ruling that August 1, 2007 is the proper date for determining the Interest Repurchase Value.

## C.     **Interest Repurchase Value and Attorneys' Fees**

JNV argues that the district court erred by determining the Interest Repurchase Value and by ruling that JNV was not entitled to attorneys' fees because neither party moved for summary judgment on these issues. We agree.

Rule 56 of the Federal Rules of Civil Procedure provides:

> *After giving notice and a reasonable time to respond*, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

Fed. R. Civ. P. 56(f) (emphasis added).

"[W]e have vacated summary judgments and remanded for further proceedings where the district court provided no notice prior to granting summary judgment *sua sponte*, even where summary judgment may have been proper on the merits." *Tolbert ex rel. Tolbert v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 657 F.3d 262, 271 (5th Cir. 2011) (citations omitted). "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *see also Tolbert*, 657 F.3d at 271. We also have held that a district court's failure to provide such notice is reviewed for harmless error. *Leatherman*

11

No. 11-10958

*v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1398 (5th Cir. 1994). The error is harmless "if the nonmoving party admits that he has no additional evidence anyway or if . . . the appellate court evaluates all of the nonmoving party's additional evidence and finds no genuine issue of material fact." *Id.* (citations omitted); *see also Mannesman Demag Corp. v. M/V CONCERT EXPRESS*, 225 F.3d 587, 595 (5th Cir. 2000) (reversing district court's *sua sponte* grant of summary judgment where it provided no notice to the parties and the error was not harmless).[5]

Regarding the Interest Repurchase Value, neither party moved for summary judgment on this issue, and the district court did not provide notice to the parties that it intended to determine this value on summary judgment *sua sponte*. Thus, it was error for the district court to determine this issue on summary judgment without providing such notice. Moreover, the error was not harmless because the summary judgment record demonstrates that there is a genuine dispute between the parties regarding the value of JNV's Interests on August 1, 2007: the parties have proffered vastly different measures of this value and were prepared to offer expert testimony on this issue at trial. We therefore vacate and remand the district court's summary judgment determining the Interest Repurchase Value.

Similarly, the district court erred by deciding that JNV is not entitled to attorneys' fees based on Flight Options' alleged bad faith. Ohio law permits the recovery of attorneys' fees in a breach of contract action where: 1) the contract expressly provides for them; 2) a statute entitles the plaintiff to attorneys' fees; or 3) where the plaintiff demonstrates that the defendant acted in bad faith.

---

[5] We recognize that *Leatherman* and *Mannesman* interpreted the former version of Fed. R. Civ. P. Rule 56(c), which required that a district court provide a nonmovant with ten days' notice prior to granting summary judgment *sua sponte*. The current version of Rule 56 does not contain this specific ten-day requirement, but it does require notice and a reasonable time to respond. Accordingly, the harmless error analysis still applies.

No. 11-10958

*Sturm v. Sturm*, 590 N.E.2d 1214, 1217 (Ohio 1992). Whether a party is entitled to attorneys' fees is a question of fact. *See id.* (citation omitted) (acknowledging that attorneys' fees are allowed where defendant's conduct is "in bad faith, vexatious, wanton, obdurate or oppressive").

Neither party moved for summary judgment on the issue of attorneys' fees, and the district court did not notify the parties that it intended to rule on this issue beforehand. Thus, the district court erred by deciding this issue on summary judgment *sua sponte.* Moreover, Flight Options and JNV dispute the facts underlying the parties' conduct relevant to the bad faith inquiry. Therefore, because JNV's entitlement to attorneys' fees is a question of fact, there are material facts in dispute, and the parties did not have an opportunity to come forward with all of their evidence on this issue, the district court's *sua sponte* summary judgment denying JNV attorneys' fees was not harmless error. Accordingly, we vacate and remand the district court's ruling that JNV is not entitled to attorneys' fees.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's summary judgment rulings on the parties' breach of contract claims and the valuation date for determining the Interest Repurchase Value. We VACATE the district court's determination of the Interest Repurchase Value and its denial of attorneys' fees to JNV, and we REMAND for further proceedings.